# UNITED STATES DISTRICT COURT

for the

Eastern District of California

United States of America

v.

JASON A. TOBEY

Defendant

Case No.

3:18-mj-0024 DMC

## NOTICE OF MOTION

COME NOW, to The United States District Court, the Judge of Magistrate hearing this matter, The United States Forest Service, Officer Carson R. Harris, and any all of other interested parties, please take note that on May 7, 2019 at 11:00 a.m. at the Federal District Courthouse located at 2986 Bechelli Ln., Redding CA, 96002, Defendant Jason A. Tobey will move this Court to make the following two rulings.

1. As a matter of right under Federal Rules of Criminal Procedure 12(b) this matter should be dismissed.
2. That Defendant Jason A. Tobey be given the opportunity participate in Pretrial Diversion.

## CASE FACTS

On the morning of September 23, 2018, an air craft flew over the home of the Defendant, Jason A. Tobey. The aircraft flew so low over the airspace directly

over the Defendant's home, that it caused the house to shake, scaring his wife and animals. The Defendant, Jason A. Tobey, went outside of his home to see what was causing the commotion and saw a civilian helicopter flying so low that it barely missed hitting the power lines. The Defendant witnessed the helicopter land across the street from his residence at the Mott Airport. The Defendant's wife then informs him that this was not the first time within the last week that the helicopter has flown unsafely over their residence.

The Defendant is a veteran of the United States Military, and having such specialized training and knowledge in regards to flying aircrafts in the airspace over residential districts, he knew that the pilot was flying in an unsafe manner, and "showboating."

Because of the unsafe manner in which the pilot was flying over the Defendant's home, the Defendant drove to Mott Airport. At this time, unbeknownst to the Defendant, the Mott Airport was being used as a base camp for the aircrafts during the Delta incident. Defendant went to Mott Airport in an attempt to find out who the pilot was that flew over his home, and why the pilot was flying so low, so that he could report the pilot for the unsafe manner in which he was flying.

When the Defendant approached the Mott Airport gate, he noticed a late model gray Kia Soul parked along side the road with a dirty, long bearded male sitting in the driver's seat. At this point the Defendant believed that the person sitting in the Kia Soul was most likely a drug dealer as they have had numerous problems with this sort of conduct in their neighborhood. Also, the vehicle was unmarked and the person in the car was not in uniform nor did they have any type of credentials displayed. The Defendant stopped his vehicle outside the airport gate, startled and confused as to why the gate was unlocked and opened.

While the Defendant was sitting inside his vehicle, outside of the airport gate, he was looking around to see if he could find someone that could tell him

why the airport gate was open. At this time, the Defendant saw movement out of his side mirror, turned, and saw that the dirty, indigent looking man, wearing mirrored sunglasses, that had been previously sitting in the Gray Kia Soul, was approaching his vehicle. The Defendant backed up to the unidentified man and rolled his window down when the man made a gesture to him.

The unidentified man looked to be in his mid 20s, with a long beard and was wearing a dirty orange-brown t-shirt and dark colored dirty pants. The man then barked at the Defendant, "what do you want?" At this unnecessary treatment, the Defendant stated "I'm here to get the name and FAA number of the guy flying that helicopter," and the Defendant pointed at the helicopter that had just flown over his home. The man replied, "good luck with that," in a demeaning tone.

At this point, the Defendant was feeling rather anxious due to the "buzzing" of his home by the helicopter, which triggered Defendant's Post Traumatic Stress Disorder and was now being exacerbated by the unnecessarily aggressive, hostile and demeaning manner he was being treated by the still unidentified man. Under this feeling of distress, the Defendant responded "Why's that? That helicopter just buzzed my house, shaking my house so hard the dishes were rattling and scaring the hell and of me and my family." To which the man responded by laughing then pulled a radio out from behind his back and called someone.

The Defendant next tried to explain to the man that the real problem was that the pilot flying the helicopter was not following the prescribed FAA flight path that was set up for the Mott airport. At this point another man arrived at the scene on a bicycle, neither man identified themselves, and the second man began interjecting himself into the conversation, being as condescending and aggressively rude as the first man. The first man responded again asking, "What the hell does that matter?" The Defendant then tried to explain that Mott airport was a municipal airport that had a designated flight path to eliminate the problem of buzzing people's houses. The man again responded that helicopters could go

wherever they wanted. At this statement, the Defendant asked, "What are you telling me? That I am going to have to protect the airspace above my home?" One of the men then asked the Defendant if he intended to shoot down the aircraft. Being somewhat hard of hearing and thinking that he must have misunderstood the still unidentified man, the Defendant asked, "Shoot it down over my house?" looking for clarification on what was just said.

At this point, the Defendant felt very uncomfortable in this situation and recognized that the situation was getting out of control, so he said, "If you actually have anything to do with the helicopters, just tell that guy to stop buzzing my house," and he left.

The next day, September 24, 2018, a helicopter again flew very low over the Defendant's home. The Defendant went outside and saw the helicopter in slow hover barely missing the the utility lines, complete a tail rotation, and land at the Mott Airport across from his house.

The Defendant again went to the Mott Airport where he again saw the same man sitting in the gray Kia Soul outside the gate to the airport. The Defendant slowed to a stop close to the Kia Soul. The man got out of the vehicle and approached the Defendant asking "What do you want now?" to which the Defendant replied, "Did we just have this conversation yesterday? Did you not just see that helicopter come in, hover over my house and then whip around, showing off before landing?" The man replied, "Yeah, so? I already talked to them about you yesterday."

A few moments later, another man in a black hoodie approached the Defendant and the first man and asked how he could help. The Defendant explained to him how the helicopter just flew in low over his house, showboating, whipping his tail around and even broke a limb off of a tree in front of my house. The man that the Defendant had been talking to interjected and said, "No, he just wants to shoot everyone down." The Defendant then explained that that was not

the case, and that he was just trying to get to the bottom of the situation because the way the pilot was flying the helicopter was unsafe and not a part of the flight path. The unidentified man who had just arrived tried to make the excuse that the helicopters had to fly in such a pattern because they could not fly over the helicopters on the ground. The Defendant then told the two men that he knew this was not true because he was a United States Marine and that during his service, he was attached to an air wing on helicopters and therefore, he knew for a fact that there was no issue with a helicopter flying over helicopters on the ground since they had less space to maneuver the helicopters on the ship. The Defendant then asked if he should go home and call law enforcement. He was told to do whatever he thought he had to do.

The Defendant returned home and called the county Sheriff's office, which was also done by the men at Mott Airport. A sheriff's vehicle, California Highway Patrol and City of Mount Shasta Vehicle, all came to the Defendant's residence. He was immediately handcuffed, placed in the back of a vehicle, and driven back to the airport. The law enforcement agencies then spoke with one another and then let the Defendant out of the vehicle, uncuffed him, and stated that there was no reason to place him under arrest as far as they were concerned. It was at this point that a U.S. Forestry service vehicle arrived with Officer Wilson inside. Officer Wilson placed the Defendant in handcuffs and put him in her vehicle, then she went inside one of the buildings. While officer Wilson was inside the building, several unidentified individuals came by the vehicle the Defendant was being held in, tapped the windows and taunted him by saying things like they knew who he was, they'd make sure he rotted in jail and they'd make sure he'd pay.

The Defendant was then driven to the Shasta County jail where he was put on a federal hold and was never told what he was being charged with.

# THE MOTION

## I. FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)

The Federal Rules of Criminal Procedure 12(b), provides that **Pretrial Motions (1)** *In General.* A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits...

Here, because *Federal Rules of Criminal Procedure 12(b)* provides that a party may raise, by pretrial motion, any defense, objection, or request, Defendant Jason Tobey may request a complete dismissal of the charges against him prior to the case being heard on the merits at trial. Therefore, the Defendant Jason A. Tobey will, and hereby does, request that the Court dismiss the current charges against him for the following reasons:

### A. THE FIRST AMENDEMENT PROTECTS VERBAL CRITISICMS

In this case, Defendant Jason Tobey is being charged with *36 Code of Federal Regulation 261.3(C):* and specifically "threatening/intimidating any Forest officer while engaged in, or on account of, the performance of duties for the protection the National Forest."

*36 Code of Federal Regulation 261.3(C)* specifically provides that you are guilty of violating this code if you committed any of the following acts:

"(c) Threatening, intimidating, or intentionally interfering with any Forest officer, volunteer, or human resource program enrollee while engaged in, or on account of, the performance of duties for the protection, improvement, or administration of the National Forest System or other duties assigned by the Forest Service."

The Court in *United Stated v. Willfong,* held that "The First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest (United States v. Willfong, 274 F.3D, 1297)."

In this case, and in the interest of justice, the charges against Jason A. Tobey must be dismissed. The complaint alleges that the Defendant stated that he would "shoot the helicopters out of the sky." This is clearly a misstatement of facts as they actually occurred. As stated above, the unidentified man asked if the Defendant was going to "shoot the helicopters out of the sky," and the Defendant repeated this statement because he was confused as to what the unidentified man was suggesting. The Defendant was not threatening or intimidating any person, he was merely criticizing the way the helicopter pilot was flying which was not in accordance with the Mott Airport flight path.

Further, if the Defendant was truly intimidating and threatening to the unidentified persons, and they truly believed that he intended to shoot the helicopters out of the sky, why was the Defendant not reported to law enforcement right away? Also, the Defendant, who was wearing flip flops, shorts and a t-shirt on this day, never got out of his vehicle, did not act or gesture aggressively, and he was not armed. Although Officer Wilson's report indicates that the Defendant does own guns, at this point, this information was unknown to all of the unidentified persons, so therefore, they would have no reason to believe that the Defendant could even shoot helicopters out of the sky if he had in fact so intended.

Therefore, it is clear that the Defendant intended to criticize the pilot for his failure to fly in accordance with the flight path and by doing so, placing people and their homes in danger. As

such, Defendant's speech is protected under the First Amendment and the complaint against him must be dismissed because the speech was highly unlikely to "produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest, " and it was not meant to threaten or intimidate any person or officer. Further, as stated above, at no time during this verbal exchange did the unidentified individuals ever identify themselves to the Defendant as being Federal contracted employees of any kind.

## II. PRETRIAL DIVERSION

Since the Defendant was first charged in the above stated matter, he has repeatedly requested that he be allowed Pretrial Diversion. An application for Pretrial Diversion requires that any the U.S. Attorney, in his/her discretion, may divert any individual against a whom prosecutable case exists and who is not:

1. Accused of an offense which, under existing Department guidelines, should be diverted to the State for prosecution;
2. A person with two or more prior felony convictions;
3. A public official accused of an offense arising out of an alleged violation of a public trust; or
4. Accused of an offense related to national security or foreign affairs.

In this case, the Defendant Jason A. Tobey, is a perfect candidate for the pre-trial diversion program. Mr. Tobey is not accused of an offense that should be diverted to the State for prosecution, he has no prior criminal record, he is not a current or former public official, and he is not charged with an offense related to national security or foreign affairs. Further, Mr. Tobey is a veteran of the United State marine Corps. and as such, should be given a chance to

overcome this charge through the pre-trial diversion program. Also, it should be noted that Defendant's case is being prosecuted by a U.S. Forestry officer rather than an U.S. Attorney. If a U.S. Attorney was prosecuting this case, the Defendant would have been offered pre-trial diversion rather than the United States incurring the burden and costs of prosecuting a costly case, that is a misdemeanor, punishable by no more than a $600 fine and 6 months imprisonment.   Therefore, we respectfully request that pre-trial diversion be offered to the Defendant Jason A. Tobey.

## CONCLUSION

The Defendant is being charged with 36 CFR 261.3, in particular Intimidating/Threatening a Forest officer. In the interest of justice this charge against the Defendant should be dismissed as Defendant's speech did not rise to the level of threatening or intimidating an officer, the employees never identified themselves as such, and further, Defendant's speech is protected under the First Amendment. Therefore, we request that the charges against Defendant be dismissed. In the alternative, we request that the Defendant be offered pre-trial diversion.

Dated: 4/18/2019

Respectfully Submitted,

*Natalie R Lindung*

TravisStroudLaw Firm